337 F.2d 146
 119 U.S.App.D.C. 110
 FAR EAST CONFERENCE, Petitioner,
v.
FEDERAL MARITIME COMMISSION and United States of America,
Respondents (twocases).
NORTH ATLANTIC BALTIC FREIGHT CONFERENCE et al., Petitioners,
v.
FEDERAL MARITIME COMMISSION and United States of America,
Respondents.
NORTH ATLANTIC CONTINENTAL FREIGHT CONFERENCE et al., Petitioners,
v.
FEDERAL MARITIME COMMISSION and United States of America,
Respondents.
PACIFIC COAST EUROPEAN CONFERENCE, Petitioner,
v.
FEDERAL MARITIME COMMISSION and United States of America, Respondents.
 Nos. 18468, 18471, 18475, 18477, 18518.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 29, 1964.
Decided Aug. 20, 1964, Certiorari Denied Jan. 25, 1965, See
85 S.Ct. 704, 705.
 
 Mr. Elkan Turk, Jr., New York City, with whom Mr. Seymour H. Kligler, New York City, was on the brief, for petitioner in Nos. 18,468 and 18,518.
 Mr. Burton H. White, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of court, with whom Mr. Arthur E. Tarantino, Washington, D.C., was on the brief, for petitioners in Nos. 18,471 and 18,475.
 Mr. Charles F. Warren, Washington, D.C., for petitioner in No. 18,477.
 Mr. Robert E. Mitchell, Deputy Gen. Counsel, Federal Maritime Commission, with whom Asst. Atty. Gen. William H. Orrick, Jr., Messrs. James L. Pimper, Gen. Counsel, Federal Maritime Commission, and Irwon A. Seibel, Atty., Dept. of Justice, were on the brief, for respondents.
 Before WILBUR K. MILLER, FAHY and WRIGHT, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 Nos. 18,468, 18,471, 18,475 and 18,477 may be considered together. Each case is a petition by one or more steamship Conferences, composed of common carriers by water and organized under agreements approved by the Federal Maritime Commission under Section 15 of the Shipping Act of 1916, as amended,75 Stat. 763, 46 U.S.C. 814 (Supp. IV, 1961), to review orders of the Commission issued under the authority the Commission claims by reason of Section 21 of the Act.[1] The orders are not related to any proceeding pending before the Commission on a complaint, but have been issued as part of a 'Foreign Trade Study' by the Commission. Section 21 authorizes the Commission to
 
 
 2
 'require any common carrier by water, or other person subject to this chapter, or any officer, receiver, trustee, lessee, agent, or employee thereof, to file with it or him any periodical or special report, or any account, record, rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this chapter. Such report, account, record, rate, charge, or memorandum shall be under oath whenever the Board or Secretary so requires, and shall be furnished in the form and within the time prescribed by the Board or Secretary,'
 
 
 3
 followed by penalty provisions for non-compliance. 39 Stat. 736 (1916), 46 U.S.C. 820 (1958).
 
 
 4
 Only Part I of the orders is involved.[2] It requires each Conference, as agent for its common carrier members, to produce at the Commission's offices in Washington, D.C., as follows:
 
 
 5
 a. A copy of any letters, memoranda, circulars, and other correspondence or documents exchanged between the conference and any of its common carrier member lines and/or any of their agents, during the period January 1, 1962 through September 30, 1963, relating to rates on any of the commodities listed in Attachment A hereto. Documents which merely list or state such rates without discussion need not be furnished.
 
 
 6
 b. A copy of any reports, studies, analyses or documents compiled by or for or received by the conference between January 1, 1959 and September 30, 1963, with respect to all rates charged by the conference. Documents which merely list or state such rates without discussion need not be furnished.
 
 
 7
 Whenever any of the foregoing information has been otherwise furnished to the Commission, at the request of the Commission, a statement to that effect identifying the matter filed and the time of such filing, may be submitted in lieu of the matter requested.
 
 
 8
 This request was preceded by a recitation of the requirements of certain provisions of the Shipping Act[3] and a statement that production of the requested data was necessary 'in order that the Commission may be properly informed as to matters bearing upon its responsibilities under these statutory provisions, and to determine what action if any it should take pursuant to such statutory provisions * * *.'
 
 
 9
 Accompanying each order was a letter from the Chairman of the Commission stating that certain rates and charges applicable to cargo from certain ports of the United States to certain foreign ports exceeded those applicable to cargo from the foreign ports to ports of the United States, particularly with respect to the commodities listed in Attachment A to the orders; and that the Commission was considering institution of an investigation of the matter pursuant to Section 212(e) of the Merchant Marine Act, 1936, and/or rate proceedings to determine the issue of the detrimental character of the rates within the meaning of Section 18(a)(5) of the Shipping Act, 1916, as amended. The letter continued,
 
 
 10
 'Prior to the institution of proceedings pursuant to the aforementioned statutory provisions, and if possible to obviate the necessity therefor, we request that you take immediate steps to make appropriate adjustments in your tariffs, particularly with respect to the rates on the commodities enumerated in Attachment A, or that you submit to the Commission statements setting forth all facts and conditions which explain or justify the higher export rates published by your conference. We request your compliance with the foregoing on or before December 15, 1963. For the purpose of evaluating your statement and determining whether formal proceedings should be instituted, the Commission is also requiring that you furnish the information described in the accompanying order issued pursuant to Section 21 of the Shipping Act, 1916.[4]
 
 
 11
 The question is whether the orders are valid. We note first the contention, pressed in No. 18,477, that the letter accompanying the order demonstrates that the Commission's purpose was to force a reduction in rates by requiring the Conferences to 'reduce or produce', and that such a coercive tactic constitutes an invalid exercise of administrative authority. We can find no such coercive purpose in the combination of the order and the letter since, as we view the matter, the information requested was to be supplied whether or not the letter itself led to the rate adjustments suggested. We have the question whether the orders are valid, not the letters. We cannot hold the orders invalid if, considered apart from the letters, they are within the Commission's authority. Isbrandtsen-Moller Co. v. United States, 300 U.S. 139, 145, 57 S.Ct. 407, 81 L.Ed. 562 (1937).
 
 
 12
 As to this we bear in mind the broad regulatory responsibilities of the Commission, considered with the exemption enjoyed by the Conferences from the antitrust laws by reason of Commission approval of Conference agreements. See Isbrandtsen Co. v. United States, 93 U.S.App.D.C. 293, 297, 211 F.2d 51, 55, cert. denied, Federal Maritime Board v. United States, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954). Within these broad responsibilities is lodged the specific authority here sought to be exercised. As to this we cannot accept petitioners' suggestion that Section 21 orders must be limited to complaint proceedings. They are available to aid investigation without the need for the support of a charge of violation of the Act, or belief even that such a violation is probable. Isbrandtsen-Moller Co. v. United States, supra, 300 U.S. at 144, 57 S.Ct. 407. In this respect the discussion by the Supreme Court in United States v. Morton Salt Co., 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950), is applicable, though that case involved the investigatory powers of the Federal Trade Commission and not of the Maritime Commission. And see Pacific Westbound Conf. v. United States, 332 F.2d 49 (9th Cir. 1964). Cf. Montship Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 160, 166, 295 F.2d 147, 153 (1961).
 
 
 13
 We need not discuss whether or not the data demanded, if the demand is otherwise valid, is of the type obtainable under Section 21, namely, 'any periodical or special report, or any account, record, rate, or charge, or any memorandum of any facts and transactions appertaining to the business of such carrier or other person subject to this Act'; for petitioners accept the view of the Commission in this respect. At least they do not dispute it in these cases, no doubt in part because of the views expressed by this court in Montship, supra, as to the broad construction to be given the enumeration in Section 21 of the kind of data the Commission may require.[5]
 
 
 14
 There is a contention, however, that a Conference is not an entity to which a Section 21 order may be applied. That section is applicable to 'any common carrier by water' or 'other person subject to this Act,' or 'any officer, receiver, trustee, lessee, agent or employee' thereof. The fact is that the Conferences are in many respects agents of the carriers which compose them. If the Conferences are in possession of the data, and the data is otherwise validly sought, it may not be refused on the theory the Conferences are not answerable to a Section 21 order.
 
 
 15
 Petitioners also contend that the orders are invalid because the data sought is not reasonably related to the Commission's statutory authority over rates in foreign commerce. They claim that the Commission's only source of control over such rates is Section 18(b)(5) which requires Commission disapproval of rates found 'to be so unreasonably high or low as to be detrimental to the commerce of the United States,' and under this limited statutory authority the Commission is concerned only with the effect of rates, not with the rate-making processes to which the requested data relates. As we read the statute, however, the Commission's concern is not solely with the detrimental effect of rates on the commerce of the United States but also with the reasonableness of rates, to which the information sought is related. We have in mind also the command of Section 212(e) which directs the Commission to investigate disparities between import and export rates and to recommend to Congress measures by which such discrimination may be corrected.
 
 
 16
 A principal argument of petitioners is based on the decisions of this court in the Montship case, and in Hellenic Lines, Ltd. v. Federal Maritime Board, 111 U.S.App.D.C. 151, 295 F.2d 138 (1961), which held the Section 21 orders then before the court to be invalid because they were set forth in such general terms that no standard existed by which to determine the relevancy of the information demanded, a defect which bore upon the reasonableness of the orders. Here, however, the purposes are set forth with reference to particular sections of the statute and the need of the Commission for the information in order 'that the Commission may be properly informed as to the matters bearing upon' the responsibilities imposed upon it by the sections thus referred to. This is clearly an effort by the Commission to meet the defect pointed out in our Montship and Hellenic Lines decisions, and, like the Ninth Circuit in its recent decision in Pacific Westbound, we think the effort has succeeded and that the stated purposes of the order show the relevancy of the data sought. The requirements to be met in the investigatory area of administrative agencies, stated in general terms in the Morton Salt case, seem to us to be satisfied in this case:
 
 
 17
 'It is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant.' 338 U.S. 632, 652, 70 S.Ct. 357, 369.
 
 
 18
 A word now as to the possible oppressiveness of the demand to produce, that is, the difficulty of compliance in relation to the need of the Commission to obtain the information. We have no basis in the record for finding oppressiveness. We rely upon the prudence and reasonableness of the Commission in cooperating with the Conferences in the manner of complying. Cf. United States v. Morton Salt Co., supra at 653, 70 S.Ct. 357.
 
 
 19
 No. 18,518. Aside from matters above disposed of, in this case Far East Conference challenges a Section 21 order demanding the data which is described in the copy of the order which is set forth as an Appendix to this opinion. As appears therefrom the data demanded relates to requests and complaints of shippers. Section 15 of the Shipping Act of 1916 was amended in 1961, 75 Stat. 764, 46 U.S.C. 814 (Supp. IV, 1961), by adding a provision as follows:
 
 
 20
 'The Commission shall disapprove any such (Section 15) agreement, after notice and hearing, on a finding of * * * failure or refusal to adopt and maintain reasonable procedures for promptly and fairly hearing and considering shippers' requests and complaints.'
 
 
 21
 The order recites that the Commission needs the data sought so as to be adequately informed as to matters bearing upon its responsibilities under this statutory provision. The objection of petitioner is that the statute vests authority in the Commission with respect to reasonable procedures for hearing and considering shippers' requests and complaints, whereas the order seeks data not as to procedures but as to requests and complaints made, and action taken in connection therewith. But it seems quite clear to us that the Commission in ascertaining whether or not the Conference has adopted and is maintaining reasonable procedures respecting requests and complaints of shippers is entitled to find out what requests and complaints have been made and what disposition has been made of them. The information requested is designed to inform the Commission as to this.
 
 
 22
 In all the cases we have not neglected to consider Section 6(b) of the Administrative Procedure Act, 60 Stat. 240 (1946), 5 U.S.C. 1005(b) (1958), limiting an agency in demanding reports and making investigations except as the agency may be authorized by law. Being of opinion that the orders are authorized by law, it follows we find Section 6(b) no bar to them.
 
 
 23
 Affirmed.
 
 
 24
 WILBUR K. MILLER, Circuit Judge, dissents.
 
 APPENDIX
 Section 21 Order
 
 25
 STUDY-- CONFERENCE PROCEDURES FOR HEARING AND CONSIDERING SHIPPERS' REQUESTS AND COMPLAINTS
 
 
 26
 Section 15 of the Shipping Act, 1916, requires, among other things that the Commission disapprove any agreement between parties subject to that Act on a finding of failure or refusal to adopt and maintain reasonable procedures for promptly and fairly hearing and considering shippers' requests and complaints.
 
 
 27
 In order that the Commission may be adequately informed as to matters bearing upon its responsibilities under this statutory provision, and to determine what action, if any, it should take under this provision, it is necessary that the conference named herein furnish the Commission with the information hereinafter specified.
 
 
 28
 NOW THEREFORE, pursuant to the authority vested in it under Section 21 of the Shipping Act, 1916, the Commission hereby orders THE FAR EAST CONFERENCE (Agreement No. 17), as agent for each of the member lines thereof, to produce at the Commission's offices in Washington, D.C., not later than January 22, 1964 the following:
 
 
 29
 1. A copy, or if oral, a complete statement of each request and/or complaint filed during the period July 1, 1963 to December 31, 1963; inclusive.
 
 
 30
 2. Copies of all interim correspondence and memoranda including all interoffice memoranda and correspondence between the conference and carriers and any report or studies pertaining to each individual request and/or complaint mentioned in Paragraph 1 above.
 
 
 31
 3. A copy, or if oral, a complete statement of each notice to shippers advising of actions taken in connection with such requests and complaints.
 
 
 32
 4. A brief resume to accompany the above setting forth the date received, the name and address of the party, the nature of the request or complaint, the date of disposition, the method of disposition, and if denied, the reason for such denial.
 
 
 33
 Whenever any of the foregoing information has been otherwise furnished to the Commission, at the request of the Commission, a statement to that effect, identifying the matter filed and the time of such filing, may be submitted in lieu of the matter requested.
 
 By Commission December 27, 1963
 
 34
 Francis C. Hurney for Thomas Lisi Secretary
 
 
 
 [1]
 Appeals from similar orders directed to other Conferences and involving different trade routes and commodities were previously filed in the Ninth Circuit. For that reason the Commission contends that this court is required to transfer these proceedings to the Ninth Circuit under 28 U.S.C. 2112(a). That section provides that when proceedings are instituted in two or more courts of appeals with respect to the same agency order the agency shall file the record in that court in which such proceedings were first instituted and the other courts shall thereupon transfer the proceedings concerning such order to the court in which the record has been filed. We do not think that this section is here applicable; for although the requests for production in the orders involved in these cases and the orders appealed from in the Ninth Circuit are substantially identical, the orders themselves cannot be considered the 'same order' within the meaning of the statute. Moreover, assuming that aside from the statute it is within the inherent power of the court to transfer the cases in the interest of sound judicial administration, we do not think that this case is an appropriate one for the exercise of such power since the appeals filed in the Ninth Circuit have already been disposed of by that court
 
 
 [2]
 Other parts of the orders as originally issued have been suspended by Commission order of February 26, 1964
 
 
 [3]
 This part of the order reads as follows:
 Under various provisions of the Shipping Act, 1916, and the Merchant Marine Act, 1936, the Commission is charged with certain regulatory responsibilities with respect to rates and practices of common carriers in the waterborne foreign commerce of the United States.
 Section 15 of the Shipping Act, 1916, requires, among other things, that the Commission disapprove, cancel, or modify agreements found to be unjustly discriminatory or unfair as between exporters from the United States and their foreign competitors or to operate to the detriment of the commerce of the United States or to be contrary to the public interest. Section 17 of the Shipping Act, 1916, prohibits common carriers by water in the foreign commerce of the United States from charging rates or fares which are unjustly discriminatory between shippers or ports, or unjustly prejudicial to exporters of the United States as compared with their foreign competitors. Section 18(b) (5) of the Shipping Act, 1916, requires that the Commission disapprove rates found to be so unreasonably high or low as to be detrimental to the commerce of the United States.
 Under Section 212(e) of the Merchant Marine Act, 1936, the Commission is required to investigate rates whereby shippers from the United States pay a higher rate from a United States port to a foreign port than the rate charged by the same carrier on similar cargo from such foreign port to such United States port, and to recommend to Congress measures by which such discrimination may be corrected.
 
 
 [4]
 By orders of March 12, 1964, March 20, 1964, and April 22, 1964, this court denied the applications of petitioners for interlocutory injunctions restraining enforcement of the Commission's orders pending final determination of the petitions to review. The orders of March 12 also dissolved orders previously entered by this court staying the effectiveness of the Commission's orders in Nos. 18,468 and 18,471
 
 
 [5]
 Petitioners, however, do contend that an order 'to produce' is not authorized by Section 21 since that section literally requires a carrier only 'to file' the requested data. Whatever the difference between producing and filing, we think this contention was disposed of by this court's opinion in Montship, supra