Tvelia v. NH Dept. of Corrections    CV-03-537-M    01/27/04

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Gerald Tvelia

   v.

New Hampshire Department
of Corrections, et al.

Civil No. 03-537-M
Opinion No. 2004 DNH 026


## REPORT AND RECOMMENDATION


Gerald Tvelia, a prisoner at the New Hampshire Department of Correction's prison in Concord, brings suit alleging a deliberate indifference to his medical needs (dental) in violation of his rights under the Eighth Amendment. He filed four motions seeking immediate injunctive relief. Document nos. 3, 5, 9 and 10. The evidentiary hearing involved only document no. 3.

### Facts

Based upon the evidence presented at the preliminary injunction hearing, I find the facts as set forth below.

Plaintiff is a convicted prisoner housed at the Department of Correction's Concord prison facility. During the relevant time period of mid-October through the date of the petition he was housed in that facility's secured housing unit (SHU).

Plaintiff has a prison history of dental problems sufficiently severe enough to have caused at least two tooth extractions and some fillings of severe decay in the first half of 2003. In mid-October 2003, he complained of renewed tooth pain and on October 15th he filed a request slip for a dental appointment. For unexplained reasons the prison health services did not respond for sixteen days (i.e. on October 31, 2003) scheduling an appointment for December 11, 2003 at 1:00 p.m. Despite complaints of constant and severe tooth pain and additional requests for attention, the dental appointment was not expedited.

In fact, on December 11, 2003 plaintiff patiently waited for the guards to take him to his 1:00 p.m. appointment. At 1:15, with no sign of any guards, plaintiff became alarmed and signaled the guards ("flagged" them) of an emergency. Officer Fadelli and Corporal Caron responded. He told them about his tooth pain and showed them his appointment slip. Officer Fadelli responded: "I don't care about your fucking pain or your appointment. Don't flag unless you are unconscious." The guards left while laughing at him. Health Services, which had provided the written appointment slip for December 11th, made the following entry on

2

his dental chart:

12-10-03 SHU "too busy" to bring over.

Document no. 7, Exhibit A, p.2.

On December 11, 2003 he sent his "motion/complaint" which was filed on December 15, 2003. He filed another inmate request slip on December 16th which finally resulted in an examination on December 19, 2003. It is clear that on the date of that examination that plaintiff was not one of those "SHU inmates (who) overstate their discomfort on request slips because they do not think they will be taken seriously otherwise." Document no. 7, Exhibit A, p.1. Instead, he was a SHU inmate subjected to deliberate indifference to severe dental needs.

His December 19th exam revealed he was in constant pain, required immediate antibiotics, needed at least one extraction and two or three root canals and had tooth pulp exposure. By then his gums were badly infected. Dr. Madden, an oral surgeon, saw plaintiff on December 29th and noted: "Patient complaint pain for a long time several teeth but mainly tooth #2." Document no. 7, Exhibit A, p.2. He still needs further dental work but because of the prison's budget the root canals were not scheduled until March. His pain continues.

3

At the evidentiary hearing the only evidence offered by the prison was that of the unit manager of SHU. He has absolutely no personal knowledge of any relevant evidence because during the entire two and one-half months at issue he was on reassignment out of SHU. The only thing he did was to investigate what happened on December 10th. The SHU officers said they were awaiting a call from dental - the same dental group that noted that "SHU 'too busy'". It is not clear whether the SHU guards, the dental office, or both are covering up since only one can be telling the truth and since the appointment was for the 11th they may both have been untruthful.

Discussion

A.    <u>Prison Litigation Reform Act (PLRA)</u>

Plaintiff acknowledged at the hearing that he has not exhausted his administrative remedies. The PLRA requires prisoners to exhaust grievance procedures before bringing suit. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to complaints about prison life, including claims of inadequate medical care. See <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). This is required even if exhaustion is futile. See <u>Booth v.</u>

4

Churner, 532 U.S. 731, 734 (2001); Medina-Claudio v. Rodriquez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002). The underlying claim must be dismissed without prejudice to refiling after exhaustion of administrative remedies.

The question remains, however, whether the PLRA's exhaustion requirement prevents a prisoner who has been and, in the future, is likely to be subjected to the torture of constant toothache from injunctive relief to prevent that irreparable harm. At least one circuit has recognized that the PLRA's exhaustion requirement does not foreclose "courts from exercising their traditional equitable power to issue injunctions to prevent irreparable injury pending exhaustion of administrative remedies." Jackson v. District of Columbia, 254 F.3d 262, 268 (D.C. Cir. 2001). This case calls for such an injunction.

B.  Preliminary Injunction Standard

"The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs." CMM Cable Rep., Inc. v. Ocean Coast Prop., Inc., 48 F.3d 618, 620 (1st Cir. 1995) (citing

5

Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal., 840 F.2d 701, 704 (9th Cir. 1988); American Hosp. Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980)).  Thus, if the court ultimately finds for the movant, a preliminary injunction provides the court with a method for preventing or minimizing any current or future wrongs caused by the defendant.  CMM Cable Rep., 48 F.3d at 620.

A district court may grant a movant's request for a preliminary injunction if the movant satisfies a four-part test, often stated as follows:  (1) a likelihood of success on the merits; (2) a risk of irreparable harm to the movant if the injunction is not granted; (3) a favorable balance of the equities; and (4) the injunction would not adversely affect the public interest.  See Langlois v. Abington Hous. Auth., 207 F.3d 43, 47 (1st Cir. 2000).  In the First Circuit, the "sine qua non" of the preliminary injunction analysis is whether the movant can demonstrate a likelihood of success on the merits.  Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).  To warrant preliminary injunctive relief, the movant's showing on the likelihood of success must be substantial.  See I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 22 (1st Cir. 1998) (stating the preliminary injunction test as requiring a showing that the

6

moving party is "substantially likely to succeed on the merits of its claim"); TEC Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 544 (1st Cir. 1996)(same).

## 1. Likelihood of Success

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). These principles apply to the conditions of a prisoner's confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). And so, while "'the Constitution does not mandate comfortable prisons,'" it also "does not permit inhumane ones." Id. (quoting Rhodes, 452 U.S. at 349).

To succeed on an Eighth Amendment violation challenging the conditions of confinement, plaintiff must establish both that the punishment inflicted was "cruel and unusual," i.e., that the

deprivation sustained was objectively "sufficiently serious," and that the official who administered the punishment was "deliberately indifferent" to the inmate's needs when the deprivation occurred. See Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991) (holding that an Eighth Amendment claim has both an objective and a subjective component); see also DesRosiers v. Moran, 949 F.2d 15, 18-19 (1st Cir. 1991) (applying Wilson's objective/subjective test to an Eighth Amendment claim for denial of necessary medical care). An official is "deliberately indifferent" to the effect the conditions are having on inmates when the official is actually aware of the substantial risk of serious harm the conditions are creating. See Farmer v. Brennan, 511 U.S. 825, 836-37 (1994) (defining "deliberate indifference" as requiring the official to be both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [to] also draw the inference").

Inadequate dental care can support a valid § 1983 action challenging the conditions of confinement protected by the Eighth Amendment. See Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989). "[T]he eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care."

8

Id. at 200. See also Dean v. Coughlin, 623 F. Supp. 392, 399 (S.D.N.Y. 1985) (failure to provide routine care violates Eighth Amendment rights).

Here, plaintiff has proved that he suffered severe pain over a period of two and one-half months due to three or four teeth and infected gums without any treatment. He has also proved that SHU guards were not only aware of his pain and were deliberately indifferent, their attitude was barbaric and intentionally cruel. The nurse and dental staff ignored requests for prompt treatment and may even have fabricated a dental entry supposedly made on December 10, 2003 to cover up their indifference. To then tell defendant he could not have the needed root canals until March "depending on the (prison) budget" is constitutionally unacceptable.

I find that defendant's mistreatment constitutes cruel and unusual punishment which is objectively sufficiently serious and that prison officials were deliberately indifferent to defendant's dental needs. He is likely to succeed on the merits.[1]

---

[1]The "reports" to the court since the hearing indicate that the prison is now living up to its constitutional duty but they are not evidence and do not alter the evidentiary record on injunctive relief.

## 2. <u>Irreparable Harm</u>

Absent injunctive relief the virtually uncontested evidentiary record demonstrates a callous and knowing indifference serious enough to shock the conscience of decent people. The Eighth Amendment simply does not permit SHU guards, prison nurses and other dental personnel to disregard a prisoner's pain and need for serious dental care for months. The inherent power of this court to enjoin the unconstitutional action of the Department of Corrections should be exercised or defendant is likely to suffer irreparable harm.

## 3. <u>Equities</u>

The unwillingness of the State of New Hampshire to adequately fund its prisons provides no basis for denying prisoner's their federal constitutional rights. All of the equities favor defendant's right to the protections of the Eighth Amendment.

## 4. <u>Public Interest</u>

It cannot be doubted that the public interest favors upholding defendant's constitutional rights.

I recommend that the Department of Corrections be enjoined as follows:

10

> The Department of Corrections, State of New Hampshire, is ordered to immediately and completely provide to defendant the dental care required by the Eighth Amendment without regard for cost and to supervise and control its employees to prevent them from interfering with those constitutional rights and/or from retaliating against him for petitioning this court for relief. The Department is further ordered to report monthly on the dental care given Mr. Tvelia until his treatment is complete.[2]

If this recommendation is approved I recommend that his other motions for injunctive relief (document nos. 5, 9 and 10) be found moot.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of</u>

---

[2]If defendant moves for appointed counsel the court will make every effort to find willing and able counsel for him.

11

<u>Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:       January 27, 2004

cc:         Gerald Tvelia, *pro se*
            Nancy J. Smith, Esq.